SCHOTT, Judge.
These consolidated cases arose out of an accident which occurred on March 10, 1979, in the City of New Orleans. As three vehicles in a line on the Expressway were coming to a stop because of traffic conditions, they were struck from behind and were pushed or ran into one another. Each driver and some guest passengers brought suit against the owner and driver of the fourth vehicle in this pileup, New Orleans Public Service, Inc. and Theodore Graff. They defended on the ground that the accident was caused by an emergency vehicle owned by the City of New Orleans when the vehi *215 cle cut into the lane of traffic ahead of the first car in this line causing a sudden emergency. Defendants also brought third party demands for contribution against the city and against the drivers of two of the cars ahead of their vehicle. Judgment was rendered in favor of all plaintiffs against defendants pursuant to jury verdicts, and defendants have appealed contesting liability and the quantum of damages awarded to one of the plaintiffs, Maurice A. Lonergan, III.
The accident happened on a rainy Saturday afternoon while the four vehicles were proceeding eastward in the right lane of the Interstate 10 Expressway bridge crossing the Industrial Canal in New Orleans. The first vehicle was owned and operated by Mrs. Catherine Boveland and occupied by two passengers. She was followed by a vehicle owned by Maurice A. Lonergan, Jr., and operated by Maurice A. Lonergan, III. He was followed by a pickup truck owned and operated by Frank Johnson and occupied by Mrs. Johnson. They were followed by defendants’ vehicle, a heavy truck containing a lift basket mounted on a crane for use in maintaining electric wires. Mrs. Boveland had to apply her brakes because of the traffic ahead of her and was in the process of stopping when she was struck three times from the rear. The third impact was the hardest jolt and caused the back seat of her automobile to be pushed into the front of the driver’s side. According to young Lonergan, the Boveland car came to a stop, and he was able to stop without striking that automobile, but was then struck twice from the rear with the second jolt being the harder. Johnson, the driver of the third vehicle, also denied making contact with Lonergan until he was struck from the rear by the defendant’s vehicle. Graff testified that a sudden emergency was created when a city emergency vehicle crossed from the far left lane over the center lane and into Boveland’s path, creating a sudden emergency for Boveland and all of the vehicles following her. Graff admitted that he was unable to bring his vehicle to a stop in time to avoid the accident, but he blamed the emergency vehicle’s maneuvers for what occurred.
The first question is whether defendants carried their burden of proof to overcome the presumption of their negligence by showing that this accident occurred because of the sudden emergency created by the city vehicle. Jones v. Meinke, 357 So.2d 838 (La.App. 4th Cir. 1978). Notwithstanding Graff’s testimony and the general agreement among all of the drivers that an emergency vehicle was in the vicinity of the accident when it occurred, this evidence is not so clear and convincing as to compel us to set aside the factual conclusion of the jury that Graff’s negligence was the proximate cause of the accident. We cannot say that this conclusion is manifestly erroneous.[1]
The next question of the contributing negligence of Lonergan and Johnson is more difficult to resolve. Despite their testimony that they did not come into contact with the vehicle ahead of them until they were struck from behind, the weight of the evidence preponderates to the effect that each following automobile struck the one in front before it was struck from the rear. Thus, Boveland felt three jolts, Lonergan felt two, and Johnson felt but one. There is some speculation by the parties that the one blow by the defendant’s vehicle against Johnson was such as to create a series of blows between Boveland and Lonergan and between Lonergan and Johnson, but no expert testimony or other credible evidence lends support to this theory. This necessarily means either that Lonergan and Johnson were both negligent in following too close or were the victims of a sudden emergency which made it impossible for them to stop their vehicles in time. If the latter were the conclusion of the jury the same reasoning should exonerate the defendants from responsibility for this accident. However, *216 this case was submitted to a jury on interrogatories asking whether defendants were “guilty of any negligence which was a proximate cause of the accident” and whether Lonergan and Johnson were guilty of any negligence which was a proximate cause of the accident in question. To the first question they answered “yes” and to the others “no.”
Our task on appeal is not to look for a method of setting aside the factual determinations of the trial court but to review the record to determine that the finding of the trial court is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). If this jury found that Lonergan and Johnson did not strike the vehicles ahead before being struck from the rear, they were clearly wrong. On the other hand, the evidence is consistent that the last blow that struck Boveland and the second that struck Loner-gan were the most severe blows, and the jury could infer that these were the blows that caused the damage. This inference is bolstered by the amount of the last blow that struck Boveland and the second that struck Lonergan were the most severe blows and the jury could infer that these were the blows that caused the damage. This inference is bolstered by the amount of damage that was done to the rear of the Johnson pickup truck. Furthermore, the jury may have been influenced by the fact that the defendants’ truck was a heavy truck, leading them to conclude that the momentum of that vehicle caused the damage and that, without the impact from the defendants’ vehicle, little or no damage would have been sustained by the other drivers and passengers. The record does not establish that this finding, assuming that it was the determining factor for the jury, was clearly wrong. Thus, we affirm on liability.
As to quantum, the only complaint of defendants is that the amount awarded to young Lonergan was excessive and constituted an abuse of the jury’s discretion. Lonergan only saw his medical doctor, an orthopedist, three days after the accident and then on two other visits. The doctor diagnosed a soft tissue injury but prescribed only home heat application and aspirin for discomfort. However, in July, four months after the accident, he began to see a chiropractor who treated him until May, 1981. By that time, after spending over $1,000 with the chiropractor, Lonergan was still complaining of pain and discomfort in association with physical activity. The jury award of $12,000 including medical expenses of over $1,200.
Young Lonergan was an athletic young man at the time of the accident, and he apparently impressed the jury with his testimony that his activities had been curtailed over a long period of time, that he had been required to submit to many treatments by the chiropractor over a long period, and that he was still left with some residual effects from the accident by the time of the trial. We cannot say that the jury award of $12,000 was an abuse of their discretion.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. Using the duty-risk analysis, we interpret the finding of the jury to mean that Lonergan and Johnson did not breach their duty.